Argued February 8; affirmed February 28, 1933

ROBERTS INVESTMENT CO., Inc., et al. *v.*
HARDIE MFG. CO.

(19 P. (2d) 429)

*Arthur Lewis,* of Portland (Lewis, Lewis & Finnigan, of Portland, on the brief), for appellants.

*John Veatch,* of Portland (Joseph, Haney & Veatch, of Portland, on the brief), for respondent.

RAND, C. J. This is an action to recover damages resulting from the collapse of a part of a store building in the city of Portland, alleged to have been caused by defendant's failure to exercise proper care in maintaining the sprinkling system with which the building

was equipped. The immediate cause of the damage was the freezing and bursting of a water pipe which supplied water to a tank on the roof of the building and was a part of the sprinkling system. This permitted large quantities of water to escape and collect on the roof of the building, causing it to fall. The building is the property of the plaintiffs and was unoccupied at the time. Defendant was a former tenant of plaintiffs under a lease which required the defendant to keep the sprinkling system in good repair and in conformity with the rules and regulations of the Underwriting Bureau.

The whole controversy is over the question of whether or not the relation of landlord and tenant existed between the parties at the time the damage was sustained.

It appears from the evidence that on February 24, 1921, the Roberts Investment Company, one of the plaintiffs herein, leased said building to defendant for the term of five years; that before the expiration of said term, and on the 27th day of January, 1926, another agreement in writing was entered into between the parties, in and by the terms of which it was agreed that the lease should be extended for the period of five years from the 30th day of June, 1926, to and until the 30th day of June, 1931, upon the condition that:

"First, the Roberts Investment Company is to expend the sum of Five Hundred Dollars ($500.00) on betterments which may be directed by the lessee during the year from June 30, 1926, to June 30, 1927; and on the 30th day of June, 1927, the said lessee is to have the privilege of giving sixty (60) days notice to cancel said lease if in their judgment they consider the property inadequate for their future use and pur-

pose, and if said notice is not given within the period of sixty days from the 30th day of June, 1927, the said lease is to continue in full force and effect upon the same conditions for the succeeding year; that is to say, that on June 30, 1927, a like notice may be given for the continuation of the lease period, and a like sum is to be expended upon betterments such as may be necessary and required by the lessee, and a similar privilege is to be granted to the lessee on the 30th day of June each year succeeding the 30th day of June, 1927, until they will have absorbed the entire lease period of this extension of five years from the 30th day of June, 1926, and the 30th day of June, 1931''.

As early as in May, 1928, the defendant decided to erect a building of its own and to exercise the privilege conferred by the extension agreement of cancelling the lease and not renewing it for the following year, and during said month verbally notified plaintiffs that it intended to exercise that privilege. At the same time, defendant requested plaintiffs to permit it to occupy plaintiffs' building until the first day of October, 1928, at the same rental as before. However, no notice in writing to that effect was given plaintiffs prior to or on the 30th day of June, 1928. There is evidence in the record tending to show that plaintiffs verbally agreed with defendant to cancel said lease and granted to defendant the right to occupy the building until October first under the same terms and conditions of its former occupancy, although there was no written evidence to that effect. However, on July 26, 1928, the defendant wrote the Roberts Investment Company as follows:

''While you have advised us verbally that it would be alright with you for us to stay here until we are ready to move, we would like your confirmation of this in writing. We will probably move some time in September, so as to be out of here by October 1st''.

No answer thereto having been received, defendant again wrote plaintiffs on August 6th, stating:

"As yet we have not had a reply to our recent letter concerning telling us in writing as you have personally that we could stay here until October 1st. Will you please give this your immediate attention".

The Roberts Investment Company answered these letters on August 7th, saying:

"As we have stated to you regarding your staying over the first of September to October 1st, 1928, under the lease of the property you occupy, we wish to be understood that this is satisfactory to us".

Up to that time there is nothing in the evidence to show that the cancellation of the lease had not been assented to by the plaintiffs, and on August 16th, defendant wrote Roberts Investment Company formally notifying it that it had cancelled the lease and on the following day it notified plaintiffs that it would turn the building over to them on October first. However, on August 22, 1928, the Roberts Investment Company wrote defendant, acknowledging receipt of its letter of August 17th and stating that the matter had been referred to their attorneys; also, stating that plaintiffs wished to be understood as not having agreed to state any definite time or make any promise whatsoever to cancel the lease, and from that time on plaintiffs have taken the position that the lease was not cancelled for the reason that no written notice was given by defendant on June 30, 1928, that it would exercise the privilege of cancelling the lease, and takes the position now that, in order to have effectuated the cancellation of the lease, the notice should have been given in writing on June 30, 1928, and not on a subsequent date and, since said notice was not given on said date, the lease is still operative although the

evidence shows that defendant surrendered possession of the building to plaintiffs and had completely moved out of the building by the morning of October 1, 1928.

So far as we can gather from the proceedings taken at the trial and from the brief filed and the argument made by plaintiffs upon this appeal, their contention seems to be that the acts proven were not sufficient to constitute in law a technical surrender of the lease, for which reason the tenancy never terminated and defendant is responsible for the damages resulting from the freezing and bursting of the pipe, although more than four months had elapsed after defendant had surrendered the possession of the building to plaintiffs.

The term "surrender" is defined by Lord Coke as a yielding up of an estate for life or years to him who has an immediate estate in reversion or remainder, wherein the estate for life or years may drown by mutual agreement between them. Co. Litt. 337 b. 2 Tiffany, Landlord and Tenant, section 187. In the same section Tiffany says:

"* * * After an estate, whether in fee simple or for life or for years, has been conveyed, the grantor and grantee in the conveyance cannot effect a reconveyance of the estate to the former by undertaking to 'rescind' or 'cancel' the original conveyance. The parties to a contract can rescind or cancel the contract, that is, they can make a new contract by which each agrees to forego his rights under the previous contract, but the mere making of a new contract can never transfer property rights, even to a person in whom they were formerly vested. Any rescission or cancellation, so called, of a lease, by the parties thereto, must consequently, in order to terminate the tenancy, constitute in legal effect a surrender, and must satisfy the requirements existing with reference to such a mode of conveyance".

■ Our statute provides that an agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interests therein, is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent. Section 9-909, Oregon Code 1930. Section 9-905 provides, in substance, that no estate or interest in real property, other than a lease for a term not exceeding one year, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing, etc. Under this latter section, the surrender of a lease may result from a conveyance or other instrument in writing, or it may arise by operation of law. Under the facts proven, a surrender by operation of law resulted from the delivery and acceptance of the possession of the leased premises on October 1, 1928, and, if as contended for, although we think the weight of the evidence clearly contradicts it, plaintiffs did not accept possession, then it is clear there was a rightful surrender of possession and termination of the tenancy in accordance with the terms of the extension agreement.

■ Under what we deem to be a proper interpretation of the language used in the extension agreement, it was not necessary that the notice should be given each year on the 30th day of June, but it was sufficient that such notice should be given "within the period of 60 days from the 30th day of June" of any year. The evidence clearly shows that the possession had been surrendered on the morning of October 1, 1928, and this terminated the tenancy whether accepted by plaintiffs or not, because the tenancy was terminated right-

fully in accordance with the agreement existing between the parties from and after June 30, 1928, and the defendant's possession up to October first of that year was under a new arrangement or agreement for a lease for a shorter period than one year, which is not required to be in writing.

For these reasons, the judgment of the lower court must be affirmed, and it is so ordered.

CAMPBELL, BEAN and BAILEY, JJ., concur.